# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM REECE, ET AL., | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-12-0457-JH |
| AES CORPORATION, ET AL., | ) |
| Defendants. | ) |

## ORDER

Plaintiffs have moved to remand this case to state court. Multiple defendants have responded and the motion is fully briefed. The court conducted an evidentiary hearing on the motion on March 21, 2013, and took the motion under advisement at that time. After consideration of the parties' briefs, arguments, and hearing submissions, the court concludes the motion should be denied.

### Background

Plaintiffs filed this case in state court as a putative class action. As originally filed in October 2011, the defendants included AES Corporation, alleged to be the owner of a coal burning electric power plant located at Shady Point, LeFlore County, Oklahoma ("AES"), certain of its subsidiaries, and various companies alleged to have transported coal ash waste products from the plant to a disposal facility near Bokoshe, Oklahoma. Also named as defendants were Making Money Having Fun, LLC ("MMHF"), the owner/operator of the disposal facility, its owners, the Jacksons, and numerous truckers or trucking companies alleged to have hauled produced fluids or other waste materials from oil and gas drilling

operations to the disposal facility.[1]

Approximately one year after the initial filing, plaintiffs amended their petition to add numerous additional defendants. These included defendants involved in the drilling and production of oil and gas wells in Oklahoma and Arkansas, such as XTO Energy Inc. ("XTO"). In October 2012, XTO removed the case to this court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

The putative class is defined in the first amended petition as "consisting of all citizens and/or residents and/or property owners of the State of Oklahoma" within the class area. *Id.* at ¶145. The class area is described as that portion of LeFlore County, Oklahoma located within

> a. A three mile radius or more of the open pit (interchangeably referred to as the "Disposal Pit" or the "Dump Site") located approximate one (1) mile south of Bokoshe, Oklahoma, with the following legal description: W/2 of Sec.16, E/2 of Sec.17, NE NE NE of Sec. 20 & N/2 N/2 NW/4 of Sec. 21, T8N R24E LeFlore, County, Oklahoma and into which the Defendants, or any one of them, have transported, received, or disposed of coal combustion waste, fly ash, bed ash (collectively referred to as "Coal Waste") and/or oil and gas well produced fluids including saltwater, frac fluids, hydrocarbons, and other chemicals (collectively referred to as "Produced Fluid") which have been and continue to be dumped;
>
> b. a three mile radius of any disposal pit or dump site located within LeFlore County, Oklahoma, the presence or precise location of which Plaintiffs identify during the course of discovery in this action, and into which disposal pit or dump site Defendants, or any one of them, have transported, received, or disposed of Coal Waste and/or Saltwater or Produced Fluid;

---

[1]*Plaintiffs use the term "produced fluid" to refer to fluids produced by defendant oil and gas companies "in the course of drilling, fracing, completing, and operation" of their oil and gas wells.*

c. One thousand (1000) yards of the State of Oklahoma, LeFlore County, Town of Bokoshe, or private, roads, streets, and driveways, which are or have been:

> I. used by vehicles hauling Coal Waste from the AES Shady Point coal-fired plant located at Shady Point, LeFlore County, Oklahoma, to the Disposal Pit described in subparagraph "a" above;
>
> ii. used by vehicles hauling Coal Waste from the AES Shady Point coal-fired plant to any disposal pit or dump site within LeFlore County, Oklahoma described in subparagraph "b" above; and,
>
> iii. used by vehicles hauling Produced Fluids, including saltwater, from oil and gas well drill sites, and production sites located in Oklahoma and Arkansas to the Disposal Pit.

First Amended Petition, ¶2.

Plaintiffs generally claim they and their property (real and personal) have been damaged by defendants' "generation, storage, transport, and disposal" of coal waste from the power plant to the disposal pit, which began in the 1990's, and the "production, storage, transportation, and dumping" of saltwater and deleterious produced fluids from oil and gas operations in Oklahoma and Arkansas into the disposal pit, which actions allegedly began in the early 2000's. First Amended Petition, ¶¶ 8, 9, 11. Plaintiffs assert strict liability claims against AES, MMHF, the coal companies and the coal waste trucking companies, based on their alleged engagement in abnormally dangerous activities. They assert public and private nuisance, trespass, negligence, negligence per se, and unjust enrichment claims against all defendants. They seek injunctive relief in addition to compensatory and punitive damages.

Discussion

CAFA "extends the subject matter jurisdiction of the federal courts to encompass putative class actions in which at least one plaintiff class member is diverse from one defendant, [there are at least 100 class members] and where the amount in controversy exceeds $5 million." Weber v. Mobil Oil Corp., 506 F.3d 1311, 1313 (10th Cir.2007); 28 U.S.C. § 1332(d). Although "CAFA's language favors federal jurisdiction over class actions," Evans v. Walter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir.2006), Congress "did not give federal courts jurisdiction over all class actions, specifically excluding those consisting of 'primarily local matters.'" Johnson v. Advance America, 549 F.3d 932, 938 (4th Cir. 2008), citing Sen. Rep. No. 109-14, at 6 (2005), U.S.Code Cong. & Admin.News 2005, at 3, 7. Plaintiffs' motion to remand seeks to invoke CAFA's local controversy and home state exceptions. 28 U.S.C. §§ 1332(d)(4)(A), (d)(4)(B). Plaintiffs also assert the court should decline to exercise jurisdiction under the Act's "interests of justice" exception. 28 U.S.C. § 1332(d)(3).

As a threshold matter, it is undisputed that this case was properly removed pursuant to CAFA. While plaintiffs argued in their written submissions that defendant XTO improvidently removed the case, they acknowledged at the hearing that the court has subject matter jurisdiction under CAFA, *i.e.* that the requirements for minimal diversity, number of class members and amount in controversy have been met. *See* 28 U.S.C. § 1332(d)(2), (d)(5). Therefore the question becomes whether plaintiffs can establish that one of the three statutory exceptions to the court's exercise of jurisdiction applies. It is their burden to do so by a preponderance of the evidence. *See* In re Sprint Nextel Corp., 593 F.3d 669, 673 (7th

Cir. 2010) ("Once Sprint Nextel established that CAFA jurisdiction exists, the burden fell on the plaintiffs, who were seeking remand, to show that the home-state exception applies."); see also Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).

Each of the exceptions plaintiffs rely on requires that a certain portion of the class members be Oklahoma citizens – two-thirds or more for the home state exception, more than two-thirds for the local controversy exception and more than one-third, but less than two-thirds, for the interests of justice exception. 28 U.S.C. §§ 1332(d)(4)(B),(d)(4)(A), (d)(3). Defendants assert that "[p]laintiffs failure to adduce evidence proving the class citizenship requirements is fatal to their reliance on any exception[]." XTO Energy Co.'s response, p. 2. The court agrees.

Central to the court's conclusion in this regard is what did and did not happen at the evidentiary hearing. Plaintiffs did not offer any evidence in the conventional sense. Rather, they sought to use what they characterized as "demonstrative exhibits" to establish their position.[2] These exhibits included a pie chart purporting to reflect the percentage of "Oklahoma Class Populace" (8%) versus the "Non-Oklahoma Class Populace" (92%). The explanation for the chart was not totally clear. It was apparently based, at least in part, on counsel's analysis (or that of others working under counsel's supervision) of mailing addresses for persons shown on the records of the county assessor and/or treasurer as owning

---

[2]The two demonstrative exhibits most pertinent to the citizenship determination, labeled "Motion Demonstrative 2" and "Motion Demonstrative 2A," both carry the additional inscription "For Demonstrative Purposes Only".

5

property in the class area or having resided there.³ Plaintiffs eventually sought to have the court take judicial notice of these exhibits, presumably for use as substantive evidence, but the court declined to so recognize them. The essence of the exhibits is a conclusion by counsel or some other person on plaintiffs' behalf as to what certain other public documents purportedly show (i.e. that 8% of owners of record have addresses outside Oklahoma). There was no testimony as to what specific records were inspected, how the calculations were made, or the like. Moreover, the pertinent conclusions do not qualify for judicial notice — the underlying records might have, if offered, but someone's unsubstantiated conclusions (disputed by defendants) as to what they show do not. *See* Fed.R.Evid. 201 (embracing facts "generally ... known within the trial court's territorial jurisdiction" or those whose accuracy can be "readily determined from sources whose accuracy cannot reasonably be questioned.")

The bottom line is that plaintiffs produced <u>no</u> evidence at the hearing on the citizenship issue,⁴ ultimately relying solely on the inferences to be drawn from the face of the first amended petition.

Both in their briefs and at the hearing plaintiffs contended they are not "required to present extrinsic citizenship evidence in support of [their] First Amended Petition," and that

---

*³The exhibit's treatment of residents versus property owners was not clear from counsel's explanation. Further, the analysis appears to have been based on a group of persons significantly smaller (1200 or so, per counsel's estimate) than the number actually having a connection to the petition-defined Class Area, though it would perhaps have been useable as some sort of sampling if otherwise admissible.*

*⁴As noted above, for any of the pertinent CAFA exceptions to apply, plaintiffs must show that a certain percentage of the proposed class consists of Oklahoma citizens. 28 U.S.C. §§ 1332(d)(4)(A), 1332(d)(4)(B), 1332(d)(3).*

"federal district courts have on occasion looked solely at the allegations set forth in the pleadings to determine likely class citizenship." Those propositions may be true in certain circumstances, but they do not stretch far enough to accomplish what plaintiffs must show here.[5]

It is no doubt possible to describe a prospective class in such a way that only the citizens of a particular state are class members. *See, e.g.* Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1243 (10th Cir. 2009). In such a case, examination of the face of the complaint might well end the issue. Here, however, the proposed class is not so limited. It includes not only Oklahoma citizens, but also Oklahoma residents. Those concepts, though similar, are not the same. "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile." Smith v. Cummings, 445 F.3d 1254, 1259 (10th Cir. 2006). A person is domiciled in a particular state when he or she is physically present in the state and intends to remain there. *Id.* The Tenth Circuit has concluded that "allegation of mere 'residence' may not be equated with 'citizenship' for the

---

[5]*Plaintiffs characterize* Kaufman v. Allstate New Jersey Ins. Co., *561 F.3d 144, 157 (3d Cir. 2009), as directing "[the] lower court to focus on allegations in [the] complaint, not extrinsic evidence." Plaintiffs' motion, p. 5. However, in* Kaufman *the defendants "[did] not contest that more than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of New Jersey." Id. at 152. The district court was directed to focus on the complaint's allegations to determine whether a particular defendant's conduct was a significant basis for the proposed class's claims, not to determine citizenship.* Lafalier v. Cinnabar Serv. Co., Inc., *2010 WL 1486900 (N.D.Okla. 2010), cited by plaintiffs at the hearing, is not to the contrary. That case focused on the allegations in the complaint when considering the local defendant requirement for the local controversy exception to CAFA, but also noted that "[m]ere allegations that plaintiffs are citizens of Oklahoma will not suffice, and plaintiffs must come forward with some evidence establishing their citizenship." Id. at *5.*

purposes of establishing diversity." Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972); Martinez v. Martinez, 62 Fed.Appx. 309, 313 (10th Cir. 2003) (unpublished).[6] Similarly, the Seventh Circuit considered in In re Sprint Nextel Corp., 593 F.3d 669 (7th Cir. 2010), whether the district court had properly concluded that "the class definition itself, keyed as it is to Kansas cell phone numbers and mailing addresses, made it more likely than not that two-thirds of the putative class members are Kansas citizens." *Id*. at 673. The court noted that "[g]ranted, being a resident isn't the same thing as being a citizen, that is to say, a domiciliary." *Id.* While it was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens,"*id.* at 674, the Seventh Circuit "agree[d] with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses." *Id.*[7]

If the only uncertainty here was based on the difference between "citizenship" and "residence", the court's decision might be otherwise. But the proposed class also includes "owners" of real or personal property in the Class Area. In this context, courts have not found inferences as to citizenship based on property ownership to be particularly persuasive,

---

[6]*The fact of "residence" in a particular state is at least some evidence of domicile and citizenship, and might, in some circumstances, be sufficient to meet the two-thirds or other such standard if that description was the sole basis for the class. But that is not the case here.*

[7]*The Seventh Circuit's references to phone numbers and mailing addresses are particularly instructive here as, even if plaintiffs' "demonstrative exhibits" had been viewed as substantive evidence, their reliance on mailing addresses for property owners would have made them less than conclusive on the citizenship issue.*

8

and for obvious reasons — a person may own property in a particular state without being a citizen of it. *See* Gerstenecker v. Terminix Int'l, Inc., 2007 WL 2746847 (S.D.Ill. 2007) (in case in which class was defined as all individuals and entities that owned property in Illinois and purchased extermination contracts from the defendant, court refused to remand case under local controversy exception in the absence of evidence of citizenship as the class "appears to include individual who own property in Illinois but do not live in Illinois"); *see also* Evans v. Walter Indus., Inc., 449 F.3d 1159, 1166 (11th Cir. 2006). A person may own property in Oklahoma without being an Oklahoma citizen and there was no admissible evidence produced establishing the percentage of non-citizen owners.

The difficulty in assuming citizenship based on residence or property ownership becomes significantly greater here because the proposed class is not limited in time. The amended petition does not explicitly limit class membership to any particular time or period of time, and plaintiffs' counsel made clear at the hearing that plaintiffs viewed the proposed class as embracing persons who had been residents in the mid-1990's, the time when the coal-related activities began, and those impacted as early as 2003 by the disposal of produced oil and gas fluids.[8] Inclusion in the class definition of people who lived in, or owned property in, the class area within the last twenty years injects an additional and substantial amount of uncertainty into the citizenship determination. Some portion of former residents and/or

---

[8]*At the hearing, plaintiff's counsel argued that prior residents were included in the class, but not prior property owners. The court can discern no basis for that distinction in the petition's definition of the proposed class.*

owners will have since moved and become citizens of states other than Oklahoma. Even a relatively low annual rate of such "turnover" for an area could, over twenty years, substantially impact the citizenship composition of the proposed class.[9]

Finally, the court notes the existence of a number of ambiguities in the definition of the "Class Area" to which the proposed class membership is tied. Although these ambiguities are not of major significance for present purposes, given that the entire class area, however defined, is within the confines of LeFlore County, they nonetheless inject some additional element of uncertainty into the citizenship determination.

In short, there are simply too many variables here for the court to assume, based purely on the class definition in the first amended petition, that the pertinent citizenship thresholds are met.[10] And, as plaintiffs offered no other admissible evidence of citizenship directed to that issue, the result is that a necessary precondition for each of the CAFA

---

[9]*Defendant XTO asked the court to take judicial notice of certain "relocation" information generated by the National Association of Realtors and arguably addressing this issue. At the hearing, the court declined to take judicial notice of defendant's exhibit 9 and, upon further reflection, now concludes it will also decline to consider exhibit 10. Both are based on research by the realtor's association which, in the circumstances existing here, does not warrant judicial notice under Rule 201. However, as the burden is on the plaintiff to affirmatively show a basis for CAFA's exceptions, the exclusion of defendants' purported evidence to the contrary is not determinative.*

[10]*Plaintiffs also assert that it is "the stated intent of the Plaintiffs that the putative class membership will be entirely or predominantly comprised of Oklahoma citizens residing in LeFlore County, Oklahoma." Plaintiffs' reply, p. 4. However, class membership is determined by the allegations in the complaint, not plaintiffs' intentions. See* Baker v. GE Retail Sales Finances, Inc., *2011 WL 9352058, at \* 4 (N.D.Cal. 2011).*

exceptions plaintiffs rely on has not been established.[11]

As to the home state and interests of justice exceptions, there are additional reasons why those exceptions are not applicable. Both exceptions require that "the primary defendants" be "citizens of the State in which the action was originally filed." 28 U.S.C. §§ 1332(d)(4)(B),1332(d)(3).[12] Although there is some disagreement regarding the definition of "primary," compare Villalpando v. Exel Direct Inc., 2012 WL 5464620 at * 8 (N.D. Cal. Nov. 8, 2012) with Nicholson v. Prime Tanning Corp., 2009 WL 2900042, at *2 n.5 (W.D.Mo. Sept.3, 2009), most courts have construed the term "primary Defendants" to mean all primary defendants. Meiman v. Kenton County, 2011 WL 350465 at *8 (E.D. Ky. 2011) (citing cases); see 28 U.S.C. § 1332(d)(4)(B) ("primary defendants"). In other words, remand is authorized under these exceptions only when all of the primary defendants were citizens of Oklahoma when the lawsuit was filed.

Whether defined merely as a defendant "with direct liability to the plaintiffs," Villalpando, 2012 WL 5464620 at * 8 or a defendant "who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion

---

[11]*The question is closer as to the "interests of justice" exception, 28 U.S.C. § 1332(d)(3), because that exception requires in-state citizenship between 1/3 and 2/3 of the class and it is a shorter leap of faith to conclude those thresholds are met. Nonetheless, in the absence of evidence a significant element of speculation is still involved and, in any event, other requirements make the "interests of justice" exception unavailable.*

[12]*The determination of whether a defendant is "primary" is made based on the allegations in the complaint. Villalpando v. Exel Direct Inc., 2012 WL 5464620 at * 8 (N.D. Cal. 2012); Nicholson v. Prime Tanning Corp., 2009 WL 2900042, at *2 (W.D.Mo. 2009).*

of the asserted claims; or (5) is the only defendant named in one particular cause of action," Nicholson, 2009 WL 2900042, at *1, the court concludes, based on the allegations in the first amended petition, that at one least one foreign defendant – AES – is a "primary defendant." AES owns or controls the coal generating plant,[13] is sued directly, is the subject of all the asserted claims and has significant liability exposure as the plant it owns or controls generated the fly ash that is at the core of the controversy. AES's presence in the litigation prevents plaintiffs from demonstrating that all primary defendants are Oklahoma citizens and thus from relying on the home state and interests of justice exceptions.

## Conclusion

Although plaintiffs view this case as a truly local controversy, they have failed to satisfy their burden of establishing that it belongs in state court by reason of one of CAFA's exceptions. The proposed class is not limited to citizens, but includes property owners and residents from potentially as far back as the mid-1990's who, even if they once were Oklahoma citizens, may have changed their citizenship in the intervening years. Plaintiffs might have established the required citizenship of the class members through admissible evidence and, as the judge in Lafalier, 2010 WL 1486900, at *5 noted, "[m]ost courts ... have not imposed a heavy burden on plaintiffs in a class or mass action to establish their citizenship for the purpose of the local controversy exception." However plaintiffs offered

---

[13]*The first amended petition, at ¶ 20, alleges AES is the owner of the plant. Counsel's comments at the hearing suggest AES is not the immediate owner, but is apparently thought by plaintiffs to be responsible for the plant's operations. There are other foreign defendants, such as XTO which, based on the allegations in the first amended petition, would also likely qualify as primary defendants.*

12

nothing that the court could properly consider. As "the Court cannot make a 'leap of faith' and assume that plaintiffs are citizens of Oklahoma," *id.*, it must conclude plaintiffs have not met their burden of demonstrating that a CAFA exception applies.[14]

Accordingly, plaintiff's motion to remand [Doc. #147] is **DENIED**.

The court previously stayed proceedings pending resolution of the motion to remand. Order, February 14, 2013 [Doc. #222]. The remand issue having been resolved, the order staying the case is **VACATED**. Plaintiff's shall respond to the pending motions to dismiss within the time stated in that order.

The parties are directed to confer and submit by **April 30, 2013**, if agreement can be reached, a proposed scheduling order for further proceedings in this case. Absent a joint proposal,[15] the case will be set for status conference in due course.

---

[14]*As the court concludes jurisdiction is proper here under CAFA, and that the case should remain here, it is unnecessary to determine whether subject matter jurisdiction might also be proper in this court based on 28 U.S.C. § 1334(b), as urged by some of the defendants.*

[15]*The court appreciates that, with the number of parties involved, a joint agreement and proposal may be difficult.*

**IT IS SO ORDERED**.

Dated this 2nd day of April, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE