## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

**WILLIAM REECE, ET AL.,**

        **Plaintiffs,**

**v.**                                    **Case No. CIV-12-457-JH**

**AES CORPORATION, ET AL.,**

        **Defendants.**

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANTS THE AES CORPORATION, AES SHADY POINT, LLC, MOUNTAIN MINERALS, LLC AND COAL CREEK MINERALS LLC

---

Michael E. Smith, OBA #8385
J. Todd Woolery, OBA #18882
Sharon T. Thomas, OBA #8881
HALL, ESTILL, HARDWICK, GABLE, GOLDEN
& NELSON, P.C.
Chase Tower
100 N. Broadway Ave., Suite 2900
Oklahoma City, OK 73102-8865
Tel. (405) 55302828
Fax (405) 55302855
mesmith@hallestill.com
twoolery@hallestill.com
sthomas@hallestill.com

James M. Reed, OBA #7466
320 South Boston Ave., Suite 200
HALL, ESTILL, HARDWICK, GABLE, GOLDEN
& NELSON, P.C.
Tulsa, OK 74103-3706
Tel. (918) 594-0400
Fax (918) 594-0505
jreed@hallestill.com

**ATTORNEYS FOR DEFENDANTS, AES SHADY POINT, LLC, THE AES CORPORATION, MOUNTAIN MINERALS, LLC, and COAL CREEK MINERALS LLC**

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................... 1

**Arguments and Authorities** ......................................................................... 5

    **Standards for Motion to Dismiss** ............................................................ 5

        **I.**      **Plaintiffs Failed to Allege a Plausible Claim for Strict Liability Against Movants** .......................................... 6

        **II.**     **Plaintiffs Have Failed to Allege A Plausible Claim for Relief Against Movants Under Any of the Theories Alleged in Their Complaint** ................................... 11

                **A.**    **Plaintiffs Have Failed to Allege that Release of Coal Combustion Products at the Shady Point Plant or during the Transport of those Products to the MMHF Facility Violated Any Duty or Caused Them Any Injuries** ....................... 11

                **B.**    **Plaintiffs Have Not Plead a Plausible Claim for Relief Against Movants Based on the Alleged Activities and Releases that Occurred at the MMHF Facility or Any Other "Disposal" Site** ................................ 13

        **III.**    **A Claim for Medical Monitoring Is Not Cognizable Under Oklahoma Law** ....................................................... 16

        **IV.**    **Plaintiffs' Claims for Injunctive Relief are Preempted by the Clean Air Act and/or the Clean Water Act** .......................................................................... 17

**Conclusion** ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amburgy v. Express Scripts, Inc.,*
    671 F. Supp.2d 1046 (E.D. Mo. 2009)........................................................................12

*American Electric Power Co. v. Connecticut,*
    131 S. Ct. 2527 (2011)...............................................................................................18

*Arencibia v. 2401 Rest. Corp.,*
    699 F. Supp. 2d 318 (D.D.C. 2010) .........................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................................5

*Berneike v. CitiMortgage, Inc.,*
    708 F.3d 1141 (10th Cir. 2013) ...................................................................................5

*Cities Service Oil Co. v. Merritt,*
    1958 OK 185, 332 P.2d 677.........................................................................................9

*City of Mangum v. Brownlee,*
    1938 OK 6, 75 P.2d 174...............................................................................................7

*Cole v. Asarco, Inc.,*
    256 F.R.D. 690 (N.D. Okla. 2009)........................................................................ 16-17

*Comer v. Murphy Oil  USA, Inc.,*
    839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd on other grds.,*
    718 F.3d 460 (5th Cir. 2013) .............................................................................. 20-21

*GFF Corp. v. Associated Wholesale Grocers, Inc.,*
    130 F.3d 1381 (10th Cir. 1997) ...................................................................................5

*Great Rivers Coop. v. Farmland Indus., Inc.,*
    120 F.3d 893 (8th Cir. 1997) .....................................................................................12

# TABLE OF AUTHORITIES

**Page**

*Hardy v. Fischer,*
    701 F. Supp. 2d 605 (S.D.N.Y. 2010)..........................................................................12

*Henry v. Merck & Co., Inc.,*
    77 F.2d 1489 (10th Cir. 1989) ...................................................................................14

*Holt v. United States,*
    46 F.3d 1000 (10th Cir. 1995) .....................................................................................6

*Indian Territory Illuminating Oil Co. v. Henning,*
    1937 OK 92, 66 P.2d 83..............................................................................................15

*International Paper Co. v. Ouellette,*
    479 U.S. 481 (1987)....................................................................................................18

*Kruso v. International Tel. & Tel. Corp.,*
    872 F.2d 1416 (9th Cir. 1989), *cert. denied,* 496 U.S. 937 (1990).............................12

*Liechti v. TransCanada Keystone Pipeline GP, LLC,*
    No. CIV-11-0025-HE, 2011 WL 5087887, 2011 U.S. Dist. LEXIS 123517 (W.D.
    Okla. Oct. 25, 2011)....................................................................................................13

*McCormick v. Halliburton Co.,*
    895 F. Supp. 2d 1152 (W.D. Okla. 2012) ..................................................................16

*Mineral Resources Technologies, L.L.C. v. Grand River Dam Auth.,*
    97 F. Supp. 2d 1266 (N.D. Okla. 1999)........................................................................7

*Mobley v. Donahoe,*
    498 Fed. Appx. 793 (10th Cir. 2012)............................................................................6

*Monroe v. Owens*,
    38 Fed. Appx. 510 (10th Cir. 2002).............................................................................14

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007)....................................................................................................18

*Nicholson v. Tacker,*
    1973 OK 75, 512 P.2d 156...........................................................................................14

iii

# TABLE OF AUTHORITIES

**Page**

*North Carolina ex rel. Cooper v. Tennessee Valley Authority,*
  615 F.3d 291 (4th Cir. 2010), *cert. dism'd,* 132 S. Ct. 46 (2011)........................ 18-21

*Northwest Central Pipeline Corp. v. State Corp. Commission,*
  489 U.S. 493 (1989).....................................................................................17

*Oklahoma Gas & Electric Co. v. Beecher,*
  2011 OK CIV APP 1, 256 P.3d 1008 ..........................................................10

*Peterson v. Martinez,*
  707 F.3d 1197 (10th Cir. 2013) .............................................................5,11

*Public Service Co. v. State ex rel. Oklahoma Corporation Commission,*
  2005 OK 47, 115 P.3d 861.........................................................................10

*Robbins v. Oklahoma ex rel. Dep't of Human Servs.,*
  519 F.3d 1242 (10th Cir. 2008) ............................................................12, 14

*Ross v. Fink,*
  1963 OK 36, 378 P.2d 1011.........................................................................9

*Seismograph Service Corp. v. Buchanan,*
  1957 OK 217, 316 P.2d 185..................................................................... 6-7

*Smith v. Yoho,*
  1958 OK 80, 324 P.2d 531............................................................................7

*Superior Oil Co. v. King,*
  1958 OK 102, 324 P.2d 847...........................................................................6

*Taylor v. Hesser,*
  1998 OK CIV APP 151, 991 P.2d 35, 39 ................................................. 8-9

*Twyman v. GHK Corp.,*
  2004 OK CIV APP 53, 93 P.3d 51 ............................................................14

*Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.,*
  497 F.3d 1096 (10th Cir. 2007) ........................................................... 13-14

# TABLE OF AUTHORITIES

**Page**

*Wetsel  on behalf of Wetsel v. Independent School Dist.,*
      1983 OK 85, 670 P.2d 986.....................................................................................7-8

*Wilson v. Harlow,*
      1993 OK 98, 860 P.2d 793, *cert. denied,* 510 U.S. 1117 (1994).............................9-10

# CONSTITUTION, STATUTES AND RULES

U.S. Const. Art. VI......................................................................................................17
16 U.S.C. § 824a-3.......................................................................................................9
33 U.S.C. § 1251.........................................................................................................17
33 U.S.C. § 1311.........................................................................................................18
33 U.S.C. § 1314.........................................................................................................18
33 U.S.C. § 1342.........................................................................................................18
42 U.S.C. § 7401...........................................................................................................9
42 U.S.C. § 7408.........................................................................................................19
42 U.S.C. § 7409.........................................................................................................17
42 U.S.C. § 7410.........................................................................................................17
42 U.S.C. § 7604.........................................................................................................18
40 C.F.R. Part 52, Subpart LL, §§ 51.1920-52.1960................................................18
40 C.F.R. § 261.4(b)(4)................................................................................................8
Fed. R. Civ. P. 12................................................................................................1,5-6, 16
45 O.S. § 940.................................................................................................................7
68 O.S. § 2357.11........................................................................................................10
82 O.S. § 862................................................................................................................10

# OTHER AUTHORITIES

OUJI-CIV No. 9.1.......................................................................................................13
OUJI-CIV No. 9.10.....................................................................................................13
OUJI-CIV No. 13.1....................................................................................................6-7
RESTATEMENT (SECOND) OF TORTS § 162 .............................................................14

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants, The AES Corporation ("AES"), AES Shady Point, LLC (f/k/a AES Shady Point, Inc.) ("AESSP"), Mountain Minerals, LLC ("Mountain Minerals"), and Coal Creek Minerals LLC ("Coal Creek") (sometimes collectively referred to herein as "Movants"), move to dismiss Plaintiffs' Corrected First Amended Complaint [Doc. 315] ("Complaint"), on the following grounds:

1.     This Motion addresses all of Plaintiffs' claims asserted against Movants, which are for strict liability, public nuisance, private nuisance, trespass, negligence, negligence per se, and unjust enrichment.

2.     Plaintiffs have failed to state a plausible claim for relief against Movants.  In addition to the arguments and authorities set forth below, Movants adopt and incorporate by reference the arguments and authorities at Proposition II.C of XTO Energy, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support [Doc. 350] filed on September 3, 2013, insofar as those arguments and authorities pertain to similar allegations made by Plaintiffs against Movants.

3.     Moreover, Plaintiffs' claim for injunctive relief against Movants is preempted by the Clean Air Act and/or the Clean Water Act.

## INTRODUCTION

Plaintiffs allege that they are residents of Bokoshe, LeFlore County, Oklahoma.  *See* Complaint, ¶ 11.  Plaintiffs allege that they have been injured by the alleged presence of and exposure to coal combustion products and produced fluids.[1]  *See* Complaint, ¶ 1.  Plaintiffs allege that the coal combustion products resulted from AES and AESSP's combustion of coal to generate electricity at AESSP's Shady Point coal-fired electric generating plant located

---

[1] The coal combustion products are used beneficially.  Plaintiffs refer to coal combustion products as CCW/Fly Ash and the produced fluids as PFW.  *See* Complaint, ¶ 1.

about seven miles from Bokoshe ("Shady Point Plant").  *See* Complaint ¶¶ 15, 17-18, 88-101.  Plaintiffs allege that Mountain Minerals, Coal Creek, and certain other Defendants transported the coal combustion byproducts from the Shady Point Plant to the MMHF Facility or to other sites within LeFlore County for "disposal".  *See* Complaint, ¶¶ 3, 20, 27, 106.[2]

Plaintiffs allege that coal combustion products and other substances were emitted into the air at the Shady Point Plant and also from transport trucks and rail cars.  *See* Complaint, ¶ 99.  Plaintiffs also allege that coal combustion products were discharged into the Poteau River pursuant to AESSP's National Pollution Discharge Elimination System ("NPDES") Permit issued under the Clean Water Act.  *See* Compliant, ¶ 100.

Plaintiffs  allege that fluids produced from oil and gas wells were transported to the MMHF Facility by Defendants other than Movants.  *See* Complaint, ¶¶ 37-57.  Plaintiffs allege that the MMHF Facility is owned and operated by Defendants other than Movants.  *See* Complaint, ¶¶ 31-36.  Plaintiffs allege that the coal combustion products and produced fluids were released into waters and into the air from the MMHF facility.  *See* Complaint, ¶¶ 133-164.

Although Plaintiffs allege provisions of various federal and state statutes and regulations, including the Resource Conservation and Recovery Act (RCRA), the Clean Air Act, and the Clean Water Act, Plaintiffs state that they do not seek relief under any of those enactments.  *See* Complaint, ¶ 58.  Plaintiffs also allege 14 pages of Oklahoma Corporation

---

[2] Plaintiffs refer to the MMHF Facility as the MMHF Dump Site.  *See* Complaint, ¶ 3.a.  Movants deny that there was any "disposal" or "dumping" of coal combustion products, as alleged by Plaintiffs.  Under the statutes and regulations, the coal combustion products were used beneficially at the MMHF Facility, which is an authorized mine reclamation facility.

Commission Oil and Gas Conservation Rules, but do not allege any application of those rules to Movants. *See* Complaint, pp. 46-60, ¶¶ 83-85.

Plaintiffs allege the existence of permits and Corporation Commission orders pertaining to the MMHF Facility and the Shady Point Plant. *See* Complaint, ¶¶ 100, 154, 170, 175, 177. The permit alleged by Plaintiffs for the Shady Point Plant was issued to AESSP by the DEQ under state-delegated authority granted by the Clean Water Act. *See* current DEQ NPDES Permit for Shady Point Plant, attached hereto as Exhibit "1". It specifically authorizes the discharge of effluents from the Shady Point Plant into certain waters under the conditions set forth in the permit. The DEQ also issued air quality permits to AESSP under state-delegated authority granted by the Clean Air Act, which sets forth limitations and conditions on emissions into the air from the Shady Point Plant. True and correct copies of AESSP's original and most current air quality permits for the Shady Point Plant are attached hereto as Exhibits "2" and "3".

AESSP is taking the coal combustion products to an authorized reclamation facility, not to a "disposal" or "dump" site, as Plaintiffs erroneously allege. This is shown by the permit alleged by Plaintiffs for the MMHF Facility, which was granted by the Oklahoma Department of Mines. *See* Complaint, ¶ 154. Copies of the original permit and of the most recent revisions of the permit are attached hereto as Exhibit "4". That permit expressly designates the MMHF Facility as a reclamation facility authorizing the facility to accept coal combustion products and produced water. *See* Exhibit "4".

The Oklahoma Corporation Commission orders alleged by Plaintiffs expressly authorize the MMHF Facility to accept produced water and finds that the water was to be mixed with fly ash to form fly ash slurry. *See* Complaint, ¶¶ 170, 177, and Order Nos.

472170 and 54906 copies of which are attached hereto, respectively,  as Exhibits "5" and "6".  The MMHF Facility is also operating under an Air Quality Permit issued by the DEQ, the most recent version of which is attached hereto as Exhibit "7".  That permit authorizes emissions into the air at the MMHF Facility under the conditions and limitations set forth in the permit.

Plaintiffs allege generally that Defendants' actions in generating, hauling, disposing and storing of coal combustion products and produced fluids have caused injuries to their property and persons.  *See* Complaint, ¶¶ 2, 59.  Plaintiffs seek actual and punitive damages on behalf of themselves and a putative class under theories of strict liability, public and private nuisance, negligence, negligence per se, trespass, and unjust enrichment.  Plaintiffs also seek injunctive relief prohibiting additional "waste material" from being transported to and disposed of in "any open CCW/Fly Ash disposal pit within the Class Area; clean-up of the existing waste material and the contaminated air, soil and waters of the Class Area; monitoring of air quality, soil quality and water quality on the named Plaintiffs' property and on the property of the Putative Class Members and within the Class Area; medical monitoring of the Plaintiffs and Putative Class Members . . . ."  Complaint, ¶ 5.

Plaintiffs' allegations against Movants are conclusory.  Among other deficiencies, Plaintiffs have failed to allege that Movants' conduct of allegedly generating and transporting coal combustion products and of taking those products to a permitted reclamation facility, have violated any duty or caused them any specific injury.  Thus, Plaintiffs have failed to cure the deficiencies of their First Amended Petition, despite this Court's directive that Plaintiffs assert a factual basis for their claims and that they clarify what injuries Plaintiffs

assert were caused by each of the Defendants.  *See* Transcript of August 2, 2013 hearing at 123-124, pertinent portions of which are attached hereto as Exhibit "8".

## ARGUMENTS AND AUTHORITIES

### Standards for Motion to Dismiss

Under Rule 12(b)(6), a complaint is to be dismissed if it does not contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) stated the test as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but <u>it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility</u> of entitlement to relief.  (Emphasis added).

The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Peterson v. Martinez,* 707 F.3d 1197, 1206 (10th Cir. 2013).[3]

With respect to the permits that are expressly alleged in the Complaint, this Court has discretion to consider those permits without converting this Motion to a summary judgment motion.  *See Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1146 (10th Cir. 2013) (Court may consider, without converting a 12(b)(6) motion to dismiss to one for summary judgment, "documents incorporated by reference in the complaint, documents referred to in and central

---

[3] "[E]ven 'factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.'"  *Id.,* quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1385 (10th Cir. 1997).

to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'").

The Court may consider all of the permits attached hereto in connection with Movants' arguments under Rule 12(b)(1). In determining a motion to dismiss under Rule 12(b)(1), the court may properly consider matters outside of the pleadings to resolve any factual disputes relating to the jurisdictional issue, without converting the motion to one for summary judgment, unless "subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995).

Here, the issue of preemption is not dependent on any statute or case law that provides the substantive basis of the Plaintiffs' claims. Instead, the issue of preemption depends on the Clean Air Act and the Clean Water Act, whereas Plaintiffs' claims are based upon Oklahoma common law. Plaintiffs specifically allege that they "do not seek recovery pursuant to Federal or State administrative and regulatory enactments." Complaint, ¶ 58. *See also Mobley v. Donahoe,* 498 Fed. Appx. 793, 796 (10th Cir. 2012) ("The preemptive effect of Title VII over Mr. Mobley's claims presents a facial attack, as it presents a challenge to the complaint's sufficiency, rather than 'the facts upon which subject matter jurisdiction depends.'").

## I.      **Plaintiffs Failed to Allege a Plausible Claim for Strict Liability Against Movants.**

A party conducting an ultrahazardous activity is liable for injuries directly caused by such activity, regardless of fault. *See* Oklahoma Uniform Jury Instructions ("OUJI-Civ") No. 13.1; *Superior Oil Co. v. King,* 1958 OK 102, 324 P.2d 847; *Seismograph Service Corp. v. Buchanan,* 1957 OK 217, 316 P.2d 185. The question of whether a particular activity is an

ultrahazardous one is one of law for the court. *See* Comment to OUJI-Civ No. 13.1; *Wetsel on behalf of Wetsel v. Independent School Dist.,* 1983 OK 85, ¶ 7, 670 P.2d 986, 990.

The owning or keeping of wild animals and the use of explosives have been considered to be ultrahazardous by the Oklahoma Supreme Court. *See City of Mangum v. Brownlee,* 1938 OK 6, 75 P.2d 174; *Smith v. Yoho,* 1958 OK 80, 324 P.2d 531; *Seismograph Service Corp. v. Buchanan,* 1957 OK 217, 316 P.2d 185; Comments to OUJI-Civ No. 13.1 ("The most common type of ultrahazardous activity is the use of explosives."). However, no Oklahoma cases were found that imposed strict liability under Oklahoma law for damages from an alleged nuisance caused by coal combustion products (which is the only substance allegedly created or handled by Movants).

In fact, coal combustion products, in and of themselves, are not ultrahazardous as shown by the fact that they have beneficial uses and are widely used and sold commercially. *See, e.g., Mineral Resources Technologies, L.L.C. v. Grand River Dam Auth.,* 97 F. Supp. 2d 1266 (N.D. Okla. 1999). The beneficial use of coal combustion products is widespread. For example, in 2011 over 56 million tons of coal combustion products were beneficially used, including for waste stabilization, road construction, structural fill, or other aggregate uses. *See* American Coal Ash Association, 2011 Coal Combustion Product (CCP) Production & Use Survey Report, http://acaa.affiniscape/com/displaycommon.cfmr?an=1&subartclenbr=3.

The beneficial use of coal combustion products for reclamation, such as at the MMHF Facility, is encouraged in Oklahoma. *See* 45 O.S. § 940, which specifically exempts coal combustion products from regulation as a solid waste if they are used for mine reclamation. The beneficial uses of coal combustion products also are encouraged by the EPA and are in keeping with long-standing, established federal policy under the RCRA. As EPA's website

explains:  "Beneficially using CCPs [coal combustion products] can generate significant environmental, economic, and performance benefits."  *See* EPA, Coal Combustion Products, available at <u>http://www.epa.gov/wastes/conserve/imr/ccps/index.htm</u>.  Under 40 C.F.R. § 261.4(b)(4), coal combustion products are specifically exempt from regulation as a hazardous waste.  **Because coal combustion products are not hazardous they cannot, by definition, be ultrahazardous**.

The Oklahoma courts have held that strict liability may not be imposed if injury from the allegedly dangerous activity can be avoided by the use of reasonable care.  *See Wetsel,* 670 P.2d at 990; *Taylor v. Hesser,* 1998 OK CIV APP 151, 991 P.2d 35, 39.  Here, the issuance of permits limiting and controlling the emissions and discharges from coal-fired generating plants and allowing the placement of the coal combustion products at the MMHF Facility demonstrates that reasonable care may be taken to prevent injury from the release, transportation, and "disposal" of coal combustion products.  Plaintiffs acknowledge this in their Complaint by alleging that the permits were issued and also alleging regulations that allow emissions but require the use of reasonable care.  *See* Complaint, ¶ 81.

An example of the principle that the ability to use reasonable care to prevent injury precludes a finding of strict liability is shown by *Wetsel, supra,* wherein the Oklahoma Supreme Court held, as a matter of law, that the use of a deep-fat fryer in a classroom by a kindergarten teacher was not an ultrahazardous activity.  *Wetsel,* 670 P.2d at 990.  In *Wetsel,* a student was burned by the fat from a deep fat fryer when the fryer was knocked over.  The Court recognized the dangerous character of a deep-fat fryer but held that the use of the fryer was not ultrahazardous; rather the injuries complained of resulted from alleged negligence. The court stated:

> A deep-fat fryer does not fall under the rubric of an instrumentality that is inherently "ultrahazardous" such as a wild animal or dynamite.  Mere deployment of the latter, without any regard to fault, will give rise to liability for harm proximately resulting from it.  The student's claim cannot be predicated on the mere occurrence of an injury proximately inflicted by the use of an inherently dangerous substance. Rather, it is rested on a breached duty to use ordinary care to protect one from harm through the exercise of adequate supervision.

*Id.  See also Taylor v. Hesser,* 1998 OK CIV APP 151, 991 P.2d 35 (paintball is not an ultrahazardous activity).

Similarly, in this case, the mere generation, transportation or disposal of coal combustion products is not an ultrahazardous activity.  Rather, Plaintiffs' claims rest on alleged negligence or nuisance.  *See Ross v. Fink,* 1963 OK 36, 378 P.2d 1011, 1013 ("'The basis of liability for injury or damages to property by pollution of subterraneous waters, from oil, gas, salt water or like substances, in oil wells must be either negligence or nuisance.'") (quoting *Cities Service Oil Co. v. Merritt,* 1958 OK 185, 332 P.2d 677).

Moreover, strict liability is not appropriate where the public policy allows the business complained of, subject to regulatory limitations.  As discussed below, the public policy, as demonstrated by federal and state legislation, has allowed and encouraged the generation of electricity through coal-fired generating plants.  Imposing strict liability for the generation and disposition of the necessary products of such generation would be contrary to this public policy.

Plants such as the Shady Point plant in Le Flore County are authorized and encouraged by the Federal Energy Regulatory Commission under the Public Utility Regulatory Policies Act of 1978, Pub. L. 95-617, 92 Stat. 3117, 16 U.S.C. § 824a-3.  *See Wilson v. Harlow,* 1993 OK 98, 860 P.2d 793, *cert. denied,* 510 U.S. 1117 (1994).  As stated

in *Harlow,* the Oklahoma Corporation Commission approved a Power Sales Agreement under which AESSP agreed to construct the Shady Point Plant and OG&E contracted to purchase all electricity generated by the facility for a period of 17 to 32 years.  *Id.,* 860 P.2d at 795.

Coal-fired electric generating plants have long existed in Oklahoma and the generation of electricity by the use of coal and other means constitutes a public purpose when the power is to be provided for public use.  *See Public Service Co. v. State ex rel. Oklahoma Corporation Commission,* 2005 OK 47, ¶ 39, 115 P.3d 861, 880 ("Fuels used for the production of electricity include natural gas, coal, hydro power, and nuclear power."); *Oklahoma Gas & Electric Co. v. Beecher,* 2011 OK CIV APP 1, ¶ 10, 256 P.3d 1008, 1011 ("Since the early days of statehood, the Supreme Court has recognized that generating, storing, and transmitting electricity to those who need it is a public use for which the power of eminent domain may properly be granted.").  Coal-fired electric generating plants are encouraged by the provision of tax credits.  *See* 68 O.S. § 2357.11(B)(1) (providing a credit for certain taxes "for every person in this state furnishing water, heat, light or power to the state or its citizens, or for every person in this state burning coal to generate heat, light, or power for use in manufacturing operations located in this state.") (emphasis added). *See also* 82 O.S. § 862(b) (authorizing the Grand River Dam Authority to "develop and generate . . . electric power . . .; to acquire coal or other minerals to be used for the purposes of providing energy sources for electrical generating plants . . . .").

As stated above, coal combustion products are not regulated by the EPA as a hazardous waste and have recognized beneficial uses.  Moreover, the use of coal combustion products for mine reclamation, such as at the MMHF Facility, is encouraged in Oklahoma.

Therefore, the generation, transportation, and/or the alleged "disposal" of the coal combustion products do not constitute ultrahazardous activities as a matter of law, and Plaintiffs' claim of strict liability against Movants should be dismissed.

II.   **Plaintiffs Have Failed to Allege A Plausible Claim for Relief Against Movants Under Any of the Theories Alleged in Their Complaint.**

     A.   **Plaintiffs Have Failed to Allege that Release of Coal Combustion Products at the Shady Point Plant or during the Transport of those Products to the MMHF Facility Violated Any Duty or Caused Them Any Injuries.**

Plaintiffs allege that AESSP released coal combustion products into the air and waters of the State.  *See* Complaint, ¶¶ 99-105.  The release of coal combustion products is authorized by law and by AESSP's permits.  Plaintiffs have failed to allege facts demonstrating that AESSP's release of coal combustion products violated any duty.  An allegation that a party has a legal duty, "without any supporting factual allegations," is not sufficient.  *Peterson v. Martinez,* 707 F.3d 1197, 1206 (10th Cir. 2013).

Plaintiffs also failed to allege that AESSP's alleged releases of coal combustion products at the Shady Point Plant caused them any injury.  In fact, Plaintiffs' allegations demonstrate a lack of any injury caused by AESSP, as shown by their allegation that they all live in Bokoshe and that they seek to include, in their class area, a three-mile area around the MMHF Facility, which is located one mile south of Bokoshe, and a three-mile area around the Shady Point Plant.  *See* Complaint, ¶¶ 3.a, 3.b, 11.  However, Plaintiffs allege that the Shady Point Plant is located seven miles from Bokoshe.  *See* Complaint, ¶ 88.  Thus, Plaintiffs do not allege any facts demonstrating that they or their property are located within the area of any purported harm caused from the purported release of coal combustion

products at the Shady Point Plant.  The named Plaintiffs are required to state a plausible claim for relief on their own behalf.[4]

Plaintiffs also allege that coal combustion products were released from trucks during the transport of the products to "dump sites."  *See* Complaint, ¶¶ 106-110.  However, Plaintiffs have not alleged any facts demonstrating a causal connection between any act by Movants in transporting the coal combustion products and any injury purportedly suffered by them.  Moreover, Plaintiffs did not identify any specific Defendant that allegedly released the coal combustion products from trucks during the transportation of those products.  *See* Complaint, ¶¶ 106-110.  Where multiple defendants have been sued, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ."  *Robbins v.  Oklahoma ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th Cir. 2008).

At that August 2, 2013 hearing, this Court granted Plaintiffs leave to amend their First Amended Petition with the directive to assert a factual basis for their various liability claims and to clarify "exactly what harms are alleged to have occurred to the named plaintiffs . . . ."

---

[4] *See, e.g., Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1427 (9th Cir. 1989), *cert. denied,* 496 U.S. 937 (1990) (district court properly dismissed defendants where the named plaintiffs were unable to state a claim against those defendants); *Amburgy v. Express Scripts, Inc.,* 671 F. Supp.2d 1046, 1056 (E.D. Mo. 2009) ("Since a class representative must be part of the class, a named plaintiff cannot represent the class if his claim is properly dismissed. . . . As such, the Court must examine whether plaintiff, himself, can pursue the claim upon which he seeks relief for the proposed class."); *Great Rivers Coop. v. Farmland Indus., Inc.,* 120 F.3d 893, 889 (8th Cir. 1997) (proper to dismiss claim as to entire class where claim fails as to the only named plaintiff)); *Arencibia v. 2401 Rest. Corp.,*  699 F. Supp. 2d 318, 327 (D.D.C. 2010) ("Because all of the named plaintiffs' DCHRA claims shall be dismissed and no class has been certified, the Court need not address any claims asserted on behalf of similarly situated individuals."); *Hardy v. Fischer,* 701 F. Supp. 2d 605, 611 n. 5 (S.D.N.Y. 2010) ("In order for the Hardy [class action] complaint to survive this motion to dismiss, the allegations of at least one named plaintiff must state a claim for relief.").

Transcript of August 2, 2013 Hearing at 123-124, pertinent pages of which are attached hereto as Exhibit "8". *See also Liechti v. TransCanada Keystone Pipeline GP, LLC,* No. CIV-11-0025-HE, 2011 WL 5087887, 2011 U.S. Dist. LEXIS 123517 (W.D. Okla. Oct. 25, 2011), (court dismissed claims for negligence and strict liability because they were based upon conclusory allegations without sufficient factual allegations.).  Plaintiffs have failed to comply with the Court's directive.  Accordingly, Plaintiffs have failed to plead a plausible claim as required by law and their Complaint should be dismissed.

> **B.      Plaintiffs Have Not Plead a Plausible Claim for Relief Against Movants Based on the Alleged Activities and Releases that Occurred at the MMHF Facility or Any Other "Disposal" Site.**

Plaintiffs have not pled facts under which Movants would be liable under the theories alleged by them for the mere "disposal" of the coal combustion products at a facility permitted for that purpose.  Nor have Plaintiffs pled any facts under which Movants would be liable for the alleged wrongful conduct of the owners and operators of the MMHF facility. Plaintiffs have only made conclusory allegations that all Defendants acted individually or in concert or separately or collectively in all of the activities of which they complain. *See* Complaint, ¶¶ 2, 59.  Plaintiffs also allege, in conclusory fashion, that AESSP is responsible for the disposal of "toxic chemicals" (Complaint, ¶ 101), but Plaintiffs did not include any factual allegation to show that AESSP violated any such responsibility or that a violation of any duty was the cause of their damages.  Causation is a necessary element of each of the Plaintiffs' claims.  *See* Oklahoma Uniform Jury Instruction ("OUJI-Civ") No. 9.1 (for negligence, the plaintiffs have the burden of proving that they sustained an injury; that the defendants were negligent, and that such negligence was a "direct cause of the injury"); OUJI-Civ. No. 9.10 (for negligence *per se*, the alleged violation of a statute or regulation must have been the "direct cause of the injury"); *Valley View Angus Ranch, Inc. v. Duke*

*Energy Field Servs.,* 497 F.3d 1096, 1107 n. 17 (10th Cir. 2007) (court stated causation is a necessary element of a nuisance claim and a trespass claim, citing *Twyman v. GHK Corp.*, 2004 OK CIV APP 53, 93 P.3d 51, 54 n. 4 and RESTATEMENT (SECOND) OF TORTS § 162).

Under Plaintiffs' allegations, Movants acted properly by transporting the coal combustion products to the MMHF Facility, which was specifically permitted by the Department of Mines and the Corporation Commission (as well as the DEQ), to accept coal combustion products.  Plaintiffs allege various regulations relating to permitting, emission, and reporting requirements.  However, with respect to the MMHF Facility, Plaintiffs do not allege that those regulations have any application to Movants, who do not own or operate that facility.  Indeed, all violations that Plaintiffs allege were found by the EPA and the DEQ were violations solely against the owners and operators of the MMHF Facility.  To the extent Plaintiffs seek to hold Movants liable for the acts of the owners and/or operators of the MMHF facility, such a claim fails as a matter of law.  No duty is imposed under Oklahoma law on a party to anticipate and prevent the illegal acts of a third party, with certain exceptions not alleged in this case.  *Henry v. Merck & Co., Inc.,* 877 F.2d 1489, 1492 (10th Cir. 1989).[5]

Plaintiffs' broad allegations made collectively against multiple defendants are insufficient to state a claim against each of the Movants.  *See Robbins v. Oklahoma ex rel. Dep't of Human Services,* 519 F.3d 1242, 1250 (10th Cir. 2008) (To withstand a motion to dismiss, "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants.").  *See also Monroe v. Owens*, 38 Fed. Appx. 510, 515

---

[5] *See also id.* at 1492 ("'Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable.'") (quoting *Nicholson v. Tacker,* 1973 OK 75, 512 P.2d 156, 158.

(10th Cir. 2002) (court affirmed dismissal of Complaint "because it provide[d] no notice to the individual defendants of the factual grounds upon which each of the numerous claims rest[ed]" and, thus, it was "impossible to tell from the face of the complaint which defendants were accused of which violations, what specific acts constituted violations, or when alleged violations occurred."); *Indian Territory Illuminating Oil Co. v. Henning,* 1937 OK 92, 66 P.2d 83 (causation must be shown as to each defendant).[6]

In summary, insofar as their claims are based on purported injuries caused by releases from the MMHF Facility, Plaintiffs seek to impose liability on Movants for their alleged actions in allegedly delivering coal combustion products to a facility that was licensed for such purposes.  Plaintiffs have not alleged a plausible nexus between any alleged conduct on the part of Movants and any injury suffered by Plaintiffs.  Plaintiffs' specific allegations of "illegal" conduct relating to alleged releases at or from the MMHF Facility all pertain solely to the alleged owners and/or operators of the MMHF Facility.  Although Plaintiffs seek relief relating to all purported "disposal" facilities located in Le Flore County, Plaintiffs do not include factual allegations relating to any facility other than the MMFH Facility.

---

[6] In *Henning,* the Oklahoma Supreme Court stated:

> There was no evidence to show directly or immediately that any oil, salt water, waste or refuse had been permitted to escape from the wells and premises of the defendants or either of them.  The most that can be said of the plaintiff's evidence in this respect is that it establishes the possibility that some of the pollution might have come from the wells of the defendants.  This was insufficient to charge the defendants with liability.  As said in *Magnolia Pet. Co. v. Dexter*, 177 Okla. 153, 57 P.2d 1155:

> "Where there are several oil leases on a section of land that drains into a stream, and the stream is polluted, no lessee can be held liable without showing that polluting materials from its lease went into the stream."

66 P.2d at 84.

**III.**   **A Claim for Medical Monitoring Is Not Cognizable Under Oklahoma Law.**

Plaintiffs seek various forms of relief, including "medical monitoring of the Plaintiffs and Putative Class Members . . ." Complaint, ¶ 5. *See also id.* at p. 102, ¶ 6. Plaintiffs' Complaint contains allegations of past injury as well as potential, future injuries. *Id.* at ¶¶ 13, 14, 60(a), 131, 194, 198, 200. If a plaintiff proves that he or she has an existing disease or physical injury caused by a defendant's wrongful conduct, the plaintiff may recover the costs of future medical treatment that may be deemed medically necessary. *See Cole v. Asarco, Inc.,* 256 F.R.D. 690, 695 (N.D. Okla. 2009). **However, there is no Oklahoma law that authorizes the relief of medical monitoring.**

In *McCormick v. Halliburton Co.,* 895 F. Supp. 2d 1152 (W.D. Okla. 2012), the court granted a motion for judgment on the pleadings under Rule 12(c), dismissing a request for relief in the form of medical monitoring, stating that such a claim was not authorized by Oklahoma case law, the Oklahoma Constitution, or the Oklahoma statutes. The court held that due to the importance of the public policies at issue in connection with such a remedy, any such remedy must be authorized by the Oklahoma legislature. *Id.* at 1158. The court also pointed to the many difficult issues that would arise if medical monitoring were allowed, stating:

> Therefore, due to the complete lack of Oklahoma law, both constitutional, statutory, and case law, on this issue, due to the importance of the public policies at issue, and due to the countless specifics that would need to be addressed if a medical monitoring remedy were recognized, such as how such a remedy would be structured, claim preclusion issues, elements for such a remedy, etc., the Court concludes that the Oklahoma Supreme Court would not recognize a medical monitoring remedy in the absence of any guidance from the Oklahoma legislature and would instead defer to the Oklahoma legislature to first recognize such a remedy.

*Id.* at 1158-1159.  *See also Asarco, supra,* 256 F.R.D. 690 (court denied motion to certify a medical monitoring class, finding that medical monitoring relief was not authorized under Oklahoma law).  Plaintiffs' medical monitoring claim should be dismissed.

**IV.    Plaintiffs' Claims for Injunctive Relief are Preempted by the Clean Air Act and/or the Clean Water Act.**

State law is preempted under U.S. Const. Art. VI, Cl. 2 where (1) expressly stated in a federal statute; (2) Congress has legislated comprehensively to occupy an entire field, leaving no room for state regulation; or (3) state law conflicts with federal law either because it is impossible to comply with both, or because state law stands as an obstacle to the accomplishment and execution of Congressional objectives.  *See Northwest Central Pipeline Corp. v. State Corp. Commission*, 489 U.S. 493, 509 (1989).

The Clean Air Act, 42 U.S.C. § 7401 *et eq.,* and the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* set forth comprehensive schemes for regulating emissions and enforcing air quality and water quality standards.  The injunctive relief sought in this case, if granted, would require cleanup of air, water, and land; would require monitoring of plaintiffs' lands; and would prohibit the "disposal" of coal combustion products at any facility in Le Flore County.  Such injunctive relief would interfere with the comprehensive schemes adopted by Congress for the protection of the environment embodied in the Clean Air Act and the Clean Water Act.

The Clean Air Act sets out a comprehensive regulatory scheme designed to prevent and/or control air pollution.  The Clean Air Act requires the EPA to prescribe national air quality standards at a level to protect the public health and welfare.  *See* 42 U.S.C. § 7409. Each state may adopt an implementation plan ("SIP").  42 U.S.C. § 7410(a).  If the SIP is approved by the EPA, its requirements become federal law and are enforceable in federal

court.  *See* 42 U.S.C. § 7604(a).  *See also American Electric Power Co. v. Connecticut,* 131 S. Ct. 2527, 2537-2538 (2011).

The Clean Water Act sets out a comprehensive regulatory scheme to prevent and control water pollution.  The Act allows the EPA Administrator to "issue[] permits according to established effluent standards and water quality standards that in turn are based upon available technology, 33 U.S.C. § 1314, and competing public and industrial uses, § 1312(a)."  *International Paper Co. v. Ouellette,* 479 U.S. 481, 494 (1987).  Under the Clean Water Act, it is unlawful for any party to discharge a "pollutant" from any "point source," without previously having obtained, and complying with the terms of a National Pollution Discharge Elimination System (hereinafter "NPDES" permit).  See 33 U.S.C. §§ 1311(a); 1342.  Under the NPDES program, the EPA initially is charged with implementing the permitting system for each state, unless and until a State applies for a transfer of that permitting authority and the transfer is approved.  *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 650 (2007).  Following the approval of a state-run NPDES program, the EPA has continuing oversight responsibilities, in that "[t]he State must advise the EPA of each permit it proposes to issue, and the EPA may object to any permit," and "[i]f the State cannot address the EPA's concerns, authority over the permit reverts to the EPA."  *Nat'l Ass'n of Home Builders,* 551 U.S. at 650 n. 1.

The Clean Water Act and the Clean Air Act are "similarly comprehensive" acts.  *See North Carolina ex rel. Cooper v. Tennessee Valley Authority,* 615 F.3d 291, 306 (4th Cir. 2010), *cert. dism'd,* 132 S. Ct. 46 (2011).  The EPA is charged with enforcement of both of these Acts and, as authorized by the Acts, has delegated authority to the DEQ to enforce the state corollary acts and regulations.  *See* 40 C.F.R. Part 52, Subpart LL, §§ 51.1920-52.1960;

Memorandum of Understanding at http://www.epa.gov/region6/water/npdes/docs/oklahoma-moa.pdf.

In *North Carolina v. TVA,* the Fourth Circuit held that injunctive relief that limited emissions from coal-fired electric generating plants was preempted by the Clean Air Act. The court held: "If allowed to stand, the injunction would encourage courts to use vague public nuisance standards to scuttle the nation's carefully created system for accommodating the need for energy production and the need for clean air." 615 F.3d at 296. The court explained:

> The system of statutes and regulations addressing the problem represents decades of thought by legislative bodies and agencies and the vast array of interests seeking to press upon them a variety of air pollution policies. To say this regulatory and permitting regime is comprehensive would be an understatement. . . .
>
> The district court's well-meaning attempt to reduce air pollution cannot alter the fact that its decision threatens to scuttle the extensive system of anti-pollution mandates that promote clean air in this country. If courts across the nation were to use the vagaries of public nuisance doctrine to overturn the carefully enacted rules governing airborne emissions, it would be increasingly difficult for anyone to determine what standards govern. Energy policy cannot be set, and the environment cannot prosper, in this way. * * *
>
> * * * The real question in this case is whether individual states will be allowed to supplant the cooperative federal-state framework that Congress through the EPA has refined over many years.

615 F.3d at 298. The court emphasized that "Congress in the Clean Air Act opted rather emphatically for the benefits of agency expertise in setting standards of emissions controls, especially in comparison with the judicially managed nuisance decrees for which North Carolina argues." *Id.* at 304, citing 42 U.S.C. §§ 7408(a)(2) and 7408(b)(1). The court concluded:

> [I] t is essential that we respect the system that Congress, the EPA, and the states have collectively established. . . .  A field of state law, here public nuisance law, would be preempted if "a scheme of federal regulation . . . [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Pac. Gas & Elec. Co.*, 461 U.S. at 204, 103 S. Ct. 1713 (ellipsis in original, citation omitted). Here, of course, the role envisioned for the states has been made clear.  <u>Where Congress has chosen to grant states an extensive role in the Clean Air Act's regulatory regime through the SIP and permitting process, field and conflict preemption principles caution at a minimum against according states a wholly different role and allowing state nuisance law to contradict joint federal-state rules so meticulously drafted</u>.

*Id.* at 303 (emphasis added).

In *Comer v. Murphy Oil  USA, Inc.,* 839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd on other grds.,* 718 F.3d 460 (5th Cir. 2013), the court found preemption by the Clean Air Act as one ground for dismissal of claims against various defendants, including electric companies, for actual and punitive damages for alleged nuisance, negligence, and trespass.  Even though the claims were damage claims, the court found them to be preempted because the claims required "determinations regarding the reasonableness of the defendants' emissions."  *Id.* at 865.

With respect to the Shady Point facility, the alleged discharge of pollutants into the waters of the United States is governed by the Clean Water Act, as alleged by Plaintiffs.  The Clean Air Act governs emissions of certain criteria air pollutants including particulate matter (PM) and fugitive dust emissions, as alleged by Plaintiffs.  The Oklahoma regulations adopted pursuant to the Clean Air Act pertaining to fugitive dust emissions dictate that facilities manage potential sources of fugitive dust using reasonable precautions to prevent emissions of fugitive dust beyond the facility's boundaries.  OAC 252:100-29-2.  In addition, facilities that use open bodied trucks/trailers to handle potential fugitive dust sources must be

covered and/or wetted when transporting dusty materials in areas where the general public have access. *See* OAC 252:100-29-2(b) and 100-29-3(4).

The injunctive relief sought by Plaintiffs would have the effect of shutting down the Shady Point Plant, contrary to the permits granted by the DEQ under the state-delegated authority by the EPA under the Clean Air Act and the Clean Water Act.[7]  The requested injunctive relief would disallow emissions and discharges authorized under the Clean Air Act and the Clean Water Act and by AESSP's permits, and would also prevent AESSP from disposing of the coal combustion products at permitted facilities.  Moreover, Plaintiffs' request that Movants be required to clean up the air, water, and land would have the effect of regulating AESSP's activities and effluent and emission levels that are governed by the Clean Air Act and the Clean Water Act and Oklahoma's laws enacted under the authority delegated by those Acts.[8]  The requested relief would also require the MMHF Facility to cease business, even though it is operating under valid permits issued by the DEQ (as well as under a permit issued by the Oklahoma Department of Mines and orders issued by the Oklahoma Corporation Commission).

Thus, under *North Carolina* and *Comer,* Plaintiffs' claims for injunctive relief are preempted by federal laws.

## CONCLUSION

For the above reasons, Movants respectfully request that this Court dismiss Plaintiffs' claims against Movants.

---

[7] It may also cause AESSP to violate its long-term contract to provide electric power to a public utility, OG&E.

[8] Movants are not aware of a method for cleaning up alleged air contamination other than to limit or eliminate the complained-of emissions, which emission levels are established under the Clean Air Act.

Respectfully submitted,

s/Michael E. Smith
Michael E. Smith, OBA #8385
J. Todd Woolery, OBA #18882
Sharon T. Thomas, OBA #8881
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
Chase Tower
100 North Broadway, Suite 2900
Oklahoma City, OK  73102-8865
Telephone (405) 553-2828
Facsimile (405) 553-2855
Email: mesmith@hallestill.com
Email: twoolery@hallestill.com
Email: sthomas@hallestill.com
–And–
James M. Reed, OBA #7466
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email: jreed@hallestill.com
**ATTORNEYS FOR DEFENDANTS, AES SHADY POINT, LLC (f/k/a AES SHADY POINT, INC.), THE AES CORPORATION, MOUNTAIN MINERALS, LLC, and COAL CREEK MINERALS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:  (1) Scott McDaniel; (2) Andrew M. Conway; (3) Bradley A. Gungoll; (4) Brian R. Laughlin; (5) C. Miles Tolbert; (6) Clark O. Brewster; (7) David W. Wulfers; (8) Dru Waren; (9) Fred A. Leibrock; (10) Harold E. Heath; (11) James M. Reed; (12) Jason T. Seay; (13) Jordan K. Russell; (14) Kara E. Moore; (15) L. Mark Walker; (16) Lance E. Leffel; (17) Mark K. Stonecipher; (18) Mary B. Scott; (19) Thomas M. Ladner;  (20) Matthew T. Sheets; (21) N. Lance Bryan; (22) Pine Drewyor; (23) Robert M. Honea; (24) Sarah J. Timberlake; (25) Stacy L. Acord; (26) Steven E. Holden; (27) Stone B. Sanders; (28) Todd Maxwell Henshaw; (29) Warren Gotcher; (30) William C. McAlister; (31) Robert P. Coffey, Jr.; (32) Michael J. McDaniel; (33) Timothy J. Bomhoff; (34) William S. Leach; (35) Jessica Dickerson; (36) Charles D. Neal; (37) Jeff A. Woods; (38) Justin W. Ross; (39) Courtney Ross Samford; (40) George P. Sibley, III; (41) Robert Rolfe; (42) Alan Rudlin; (43) David Senger; (44) Philard L. Rounds, Jr.; (45) Sherry Perkins Bartley; (46) Gary C. Crapster; (47) Rusty Smith; (48) Matthew T. Sheets; (49) Philip O. Watts; (50) Rachel D. Parrilli; (51) C. Michael Daily; (52) Joshua P. Hanbury; (53) Jason David Smith; (54) Clint Russell; (55) R. Stratton Taylor; (56) Jared Giddens;  (57) Linda C. Martin; (58) Reagan L. Madison; (59) William Perrine; (60) Allison J. Maynard; (61) Ryan C. Harper; (62) Miranda R. Russell; (63) Truman B. Rucker, Jr.; (64) Rick D. Westcott; (65) Sean M. Higgins; (66) Stephen M. Ryan; and (67) Andrew D. Sims; (68) Brian R. McLaughlin; (69) Daniel K. Zorn; (70) Gary C. Crapster; (71) Jeff Belote; (72) John David Russell; (73) Lisa Paulson; (74) Matthew Panach (75) Michael V. Fitzpatrick; (76) Montgomery L. Lair; (77) Robert Stockton; (78) Robert O. O'Bannon; (79) Russell R. Barton; (80) Rusty Smith; (81) Shannon H. Ratliff; and (82) Sherry P. Bartley; (83) James Nicholas Crews; (84) Cody J. Cooper; (85) Jodi W. Dishman; (86) Shannon Davis; (87) Sean Burrage; and (88) Floyd James.

X      I further certify that I have mailed the document via the U.S. Postal Service to the following non-CM/ECF participants:

Jason David Smith
THE SMITH LAW FIRM, P.C.
Post Office Box 19
Jay, OK 74346

_____
                         /s/ Michael E. Smith